# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MATTHEW P. HOFFMAN, | Case No.: 2:17-cv-02837-WGC |
| Plaintiff, | **Order** |
| v. | Re: ECF Nos. 13, 14 |
| ANDREW SAUL,<br>Acting Commissioner of<br>Social Security Administration, | |
| Defendant. | |

Before the court is Plaintiff's Motion for Reversal and Remand. (ECF No. 13) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF Nos. 14, 15.) Plaintiff filed a reply brief. (ECF No. 16.) When Plaintiff filed his motion, Nancy A. Berryhill was the Acting Commissioner of Social Security Administration. Andrew Saul is the new Acting Commissioner, and the caption now reflects that change.

After a thorough review, Plaintiff's motion is denied, and the Acting Commissioner's cross-motion is granted.

## **I. BACKGROUND**

On or around August 6, 2014, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning July 1, 2010, from degenerative disc disease, anxiety, depression, high blood pressure, neuropathy, high cholesterol and Acquired Immunodeficiency Syndrome (AIDS). (Administrative Record (AR) 193-203.) The applications were denied initially and on reconsideration. (AR 121-140.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 141-142.) ALJ Norman L. Bennett held a hearing on September 8, 2016. (AR 33-52.) Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On November 18, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 14-28.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1-8.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ improperly rejected Plaintiff's pain and symptom testimony; and (2) the ALJ did not properly account for Plaintiff's need to elevate his leg as a reasonable accommodation. The Acting Commissioner, on the other hand, argues that: (1) substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not entirely credible; and (2) the ALJ was not required to consider reasonable accommodation.

## **II. STANDARDS**

**A. Disability Process**

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See*

20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly

limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to

determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[1]

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any

---

[1] The grids contain various combinations of factors that direct a finding of disabled or not disabled.

other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## **III. DISCUSSION**

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through September 30, 2014, and had not engaged in substantial gainful activity since the alleged onset date of July 1, 2010. (AR 19.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status post fusion surgery; human immunodeficiency virus (HIV) with fatigue; and somatic symptom disorder. (AR 19.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 20-22.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform sedentary work, except: he can lift/carry 10 pounds occasionally and five pounds frequently; he can stand or walk two hours in an eight-hour day, or sit for six hours; he cannot climb ladders, ropes or scaffolds, but can occasionally climb, balance, stoop, kneel, crouch, crawl or climb stairs or ramps; he must be allowed to elevate his feet six inches as needed, up to half the time while sitting; and, he is limited to unskilled, Specific Vocational Preparation (SVP) 2 work. (AR 22.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 27.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: addresser (Dictionary of Occupational

Titles (DOT) 209.587-010), mail clerk (DOT 209.687-026), and assistant clerk (DOT 205.367.014). (AR 28.) As a result, the ALJ found Plaintiff not disabled from July 1, 2010, through the date of the decision. (AR 28.)

## B. Plaintiff's Credibility

### 1. Standard

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7P)). Thus, a claimant's credibility is often crucial to a finding of disability. The ALJ is responsible for determining credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014-15 (internal quotation marks and citations omitted, emphasis original).

### 2. Plaintiff's Testimony

Plaintiff's testimony and statements from his adult function report are summarized below.

Plaintiff testified that due to his back surgery and resulting nerve problems, he has difficulty sitting for long periods of time. (AR 38.) He can sit anywhere from a half an hour to an hour before he has to get up or lay down. He has to elevate his feet to get his nerves to calm down. (AR 40.) He can go about a half hour to an hour without elevating his feet. (AR 46.) He has pain in his back that radiates down to his feet. (AR 40.) He has issues going up and down stairs, and cannot squat down. He naps for 40-45 minutes a day. (AR 42.)

He takes care of his two children. (AR 37.) He takes his daughter to school, which involves about a half hour trip. (AR 43.) He does grocery shopping in stages. He can do laundry, dishes, light duty repairs and clean, but his children do the laundry, dust and vacuum. He and his kids do the cooking, but they make simpler meals now. (AR 42-43, 256, 293-294.) He has two small dogs that he fees and occasionally walks. (AR 255.) His hobbies include watching his daughter play soccer, reading, playing board games with his children, watching television and using the computer. He goes to church, his daughter's soccer games, and drives his children to school. (AR 258, 295.)

Most of the day he is in a reclined or standing position, and takes time to lay down. He has difficulty putting on his socks. (AR 44, 255.) He can walk one to two hours before needing to stop and rest. (AR 259.)

His HIV makes him tired, especially when he is sick, which he testified occurs a couple times a year. When he is sick, he is down for a minimum of five to six days. (AR 45.)

**3. Analysis**

The ALJ provided an in depth summary of Plaintiff's testimony and adult function report allegations. (AR 22-23.) The ALJ then provided a detailed summary of the medical evidence. (AR 24-25.) She noted Plaintiff's spine diagnosis and eventual fusion surgery at L4 to S1 in

December of 2013, and that he continued to suffer from pain likely due to residual neuropathy, which fluctuated. He received epidural steroid injections and medications to manage his pain which were deemed quite effective. (AR 24-25.) With respect to his HIV, his viral load was undetected and he was tolerating his medication regimen well. (AR 25.) Additionally, the ALJ noted that Plaintiff was taking Xanax to help with his anxiety and depression, and while it was only helpful some of the time, he was coping with stress, though it was difficult. (AR 26.)

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (AR 26.) First, the ALJ stated that Plaintiff's spine and related neuralgia's called for significant limitations, and giving Plaintiff the benefit of the doubt, particularly regarding his ability to stand or walk for long periods, the ALJ found the evidence supported greater restriction than asserted by the state agency medical consultation. The ALJ did not find direct medical evidence that indicated more than a six-inch elevation was required for Plaintiff's legs. Second, the ALJ stated that while Plaintiff's AIDs/HIV requires regular monitoring and exacerbates his situation when he catches a cold, it is relatively uncommon and of limited duration. Finally, the ALJ concluded that Plaintiff's spinal impairments and somatic disorder limited him to a sedentary level of work, with appropriate postural restrictions and accommodation for elevating his legs; his spinal impairments required that he avoid environmental conditions that could place unusual stress on his spine; and his somatic disorder justified limiting him to unskilled work. (AR 26.)

The court finds that the ALJ reasonably accounted for Plaintiff's subjective symptom testimony in the RFC, and insofar as the ALJ can be said to have rejected or discredited any of

Plaintiff's subjective symptom testimony, the ALJ set forth specific clear and convincing reasons for doing so. The ALJ adopted an RFC regarding Plaintiff's ability to sit/stand/and walk and the need to elevate his feet part of the time that was consistent with Plaintiff's testimony, the objective medical evidence, as well as the third party source statement of Plaintiff's mother. To the extent Plaintiff asserts that he would miss too many days to work, the ALJ accurately pointed out his testimony that this to the extent he indicated this was connected to his HIV/AIDs, he testified it was relatively uncommon and of limited duration.

In sum, the court finds that the ALJ set forth legally sufficient reasons supported by the record for discrediting portions of Plaintiff's subjective symptom statements. Therefore, remand on this basis is not appropriate.

**C. Reasonable Accommodation**

The ALJ assessed Plaintiff as being required to elevate his feet six inches as needed, up to half the time while sitting. Plaintiff argues it is unclear from the record whether a reasonable accommodation (as defined under the Americans with Disabilities Act (ADA)) would be required for him to perform the work identified by the VE; therefore, Plaintiff maintains that the court should remand to determine whether he could perform this work without the need for a reasonable accommodation. Plaintiff relies on *Overlund v. Berryhill*, No. 6:15-cv-1670-SI, 2017 WL 1136674, at * 10 (D. Or. Mar. 27, 2017).

The Acting Commissioner contends that Plaintiff's argument ignores Supreme Court precedent in *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795 (1999), and the agency's policy guidance on this issue, set forth in Social Security Ruling (SSR) 00-01C, that the agency does not take the possibility of reasonable accommodation into account in adjudicating its disability claims.

1    Plaintiff does not address this argument in his reply brief.

2    In *Cleveland*, the Supreme Court considered a Circuit split regarding "the legal effect upon an ADA suit on the application for, or receipt of, disability benefits." *Cleveland*, 526 U.S. at 800. The Supreme Court pointed out that "[t]he Social Security Act and the ADA both help individuals with disabilities, but in different ways." *Id*. at 801. "The Social Security Act provides monetary benefits to every insured individual who 'is under a disability.'" *Id*. (quoting 42 U.S.C. § 423(a)(1)). "The ADA seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity." *Id*. (citing 42 U.S.C. § 12101(a)(8), (9).) "The ADA prohibits covered employers from discriminating 'against a qualified individual with a disability because of the disability of such individual.'" *Id*. (quoting 42 U.S.C. § 12112(a)). That is "a disabled person 'who … can perform the essential functions' of her job, including those who can do so only 'with … reasonable accommodation.'" *Id*. (quoting 42 U.S.C. § 12111(8)).

In *Cleveland*, the court was confronted with an ADA plaintiff who applied for and received Social Security disability benefits. The appellate court had held that the representation to Social Security Administration (SSA) that she was totally disabled created a rebuttable presumption that would estop her from later representing that she could perform the essential functions of her job with reasonable accommodation, *i.e.,* that claims under both Acts would incorporate two directly conflicting propositions, namely, "I am too disabled to work" and "I am not too disabled to work." *Id*. at 802. The Supreme Court disagreed, finding "there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Id*. at 803. The Supreme Court held, though, that the "ADA plaintiff cannot simply ignore the apparent contradiction that arises out of

the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Id*. at 806.

The Supreme Court noted that under the ADA, a qualified individual with a disability includes someone who "can perform the essential functions" of the job "with reasonable accommodation," which may include "'job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.'" *Id.* at 803 (quoting 42 U.S.C. §12111(9)).

Next, the Supreme Court confirmed that "when the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." *Id*. at 803 (citing Memorandum from Daniel L. Skoler, Associate Comm'r for Hearings and Appeals, SSA, to Administrative Appeals Judges, reprinted in 2 Social Security Practice Guide, App. § 15C[9], pp. 15-401 to 15-402 (1998), emphasis original). The Supreme Court noted that this "reflects the facts that the SSA receives more than 2.5 million claims for disability benefits each year; its administrative resources are limited; the matter of 'reasonable accommodation' may turn on highly disputed workplace-specific matters; and an SSA misjudgment about that detailed, and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide." *Id*. (citing Brief for United States et. al. as *Amici Curiae* 10-11, and n. 2, 13.)

SSR 00-01C adopted the Supreme Court's reasoning. SSR 00-01C, 2000 WL 38896. Several unpublished decisions of the Ninth Circuit have confirmed that ALJ's need not incorporate

accommodations into their assessment. "The regulations do not require that the ALJ incorporate [ADA] accommodations into the assessment." *Glaspy v. Berryhill,* 771 Fed.Appx. 747 (9th Cir. 2019). "Nor do the regulations require that the ALJ consider reasonable accommodation to determine whether work exists in the national economy at step five of the sequential evaluation." *Id.* (citing 20 C.F.R. § 404.1545); *see also New v. Berryhill*, 685 Fed.Appx. 607, 608 (9th Cir. 2017).

In sum, under *Cleveland* and SSR 00-01C, the Acting Commissioner is correct that remand on this basis is not warranted because the agency is not required to take the possibility of reasonable accommodation into account in adjudicating its disability claims. Therefore, Plaintiff's request to remand this matter on this basis is denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's motion for reversal and/or remand (ECF No. 13) is **DENIED**. The Acting Commissioner's cross-motion to affirm (ECF No. 14) is **GRANTED**. The Clerk shall **enter judgment** accordingly.

Dated: February 18, 2020.

William G. Cobb
United States Magistrate Judge